**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **ZACHERY WRIGHT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:14-CV-153 (MTT)** |
| ) | |
| **DEBORAH LEE JAMES, successor to** ) | |
| **MICHAEL B. DONLEY, as** *Secretary of* ) | |
| *the Air Force*, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>ORDER</u>

Defendant Deborah Lee James has moved for summary judgment.  (Doc. 32).

For the following reasons, the motion is **GRANTED.**

## I.      BACKGROUND[1]

In 2006, Plaintiff Zachery Wright, an African-American male, was employed as a

Painting Worker at Robins Air Force Base.  (Doc. 32-2 at ¶ 2).  After he failed a drug

screen, his employment was terminated.  (Doc. 32-2 at ¶ 2).  An SF-50 form,

Notification of Personnel Action, "resulted and it was placed in [his] permanent file."

(Doc. 32-2 at ¶ 2).  The Defendant stipulates for purposes of this motion that "the

Removal SF-50 showed, e.g., Positive Drug Test, or For Cause, or something similarly

---

[1] The facts contained in the Defendant's statement of material facts which are not controverted by the Plaintiff are deemed admitted and considered undisputed for purposes of the motion. Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); M.D. Ga. L.R. 56 ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.").

uncomplimentary."  (Doc. 40 at 3-4).  The Plaintiff appealed his termination to the Merit

Systems Protection Board ("MSPB"), and on October 11, 2006, the Plaintiff and the

Defendant entered into a settlement agreement.  (Doc. 32-2 at ¶ 2).  The Plaintiff

agreed to withdraw his appeal, while the Defendant agreed the Plaintiff's removal would

be "converted into a resignation for 'personal reasons'" and the original SF-50 "[would]

be removed from the [Plaintiff's] Official Personnel Folder and replaced with a new SF-

50 which shows that the [Plaintiff] resigned for 'personal reasons.'"  (Docs. 32-2 at ¶ 2;

32-3 at 165).  The Defendant also agreed that "[t]he new SF-50 will not contain any

reference or code that indicates that the appellant was removed for cause and will, in all

respects, be consistent with a resignation action."  (Doc. 32-3 at 165).

On September 23, 2010, the Plaintiff applied for a Painting Worker position at

Eglin Air Force Base.  (Doc. 32-2 at ¶ 4).  Although the position was located at Eglin Air

Force Base, the Robins Air Force Base Delegated Examining Unit ("DEU") was

responsible for "staffing the position" and "investigating and adjudicating the suitability of

applicants and appointees."  (Doc. 32-2 at ¶¶ 4, 7).  On October 20, 2010, the DEU

informed the Plaintiff that it had reviewed his application, "found [him] qualified for the

position," and referred him to the "selecting official(s) for consideration."  (Docs. 32-2 at

¶ 4; 32-5 at 133).  On January 5, 2011, Vivian Siu, Human Resources Specialist at

Robins Air Force Base, notified the Plaintiff that he had been "selected" for the Painting

Worker position and a "tentative entrance on duty date" of January 31, 2011, had been

"established."  (Docs. 32-2 at ¶ 5; 32-5 at 134-136).  However, Siu also informed the

Plaintiff that "[t]his employment offer is contingent upon successful completion of

employment documentation and requirements listed below[,]" and "[i]f you do not meet the employment requirements, this job offer will be withdrawn."  (Doc. 32-5 at 134).

One of the requirements Siu listed was the completion of an OF-306 Declaration of Federal Employment.  (Docs. 32-2 at ¶ 5; 32-5 at 135).  On Question 11, the Plaintiff was asked, "Are you now under charges for any violation of law?"  (Docs. 32-2 at ¶ 5; 32-5 at 105).  The Plaintiff answered "Yes" and elaborated: "Recently found out two unpaid traffic tickets in Macon, Ga.  Fines due of $600.00."  (Doc. 32-5 at 105-06).  On Question 12, the Plaintiff was asked,

> During the last 5 years, have you been fired from any job for any reason, did you quit after being told that you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management or any other Federal agency?

(Doc. 32-5 at 105).  The Plaintiff answered "No."  (Doc. 32-5 at 105).

After the Plaintiff submitted the required employment documentation, Siu logged into the Defense Civilian Personnel Data System ("DCPDS") and looked for the Plaintiff's "final SF-50 form," which "would confirm his resignation."  (Docs. 32-2 at ¶ 6; 32-7 at 104:4-16).  Siu looked up SF-50 forms for current and prior Air Force employees as a standard practice because this impacted what the employee's starting wage would be.  (Docs. 32-2 at ¶ 6; 32-7 at 104:7-12).  Although the Plaintiff's post-settlement SF-50 form was added to the DCPDS, the original SF-50 form was not deleted.  (Doc. 32-2 at ¶ 2).  Accordingly, Siu uncovered SF-50 forms that had the same dates but conflicting information: one reflected that the Plaintiff's removal was for cause, while the other reflected that he resigned for personal reasons.  (Docs. 32-2 at ¶¶ 2, 6; 32-7 at 104:16-19).

-3-

On January 26, 2011, Siu sent an e-mail to "selecting officials at both Eglin AFB and Robins AFB" which says,

> The FIRM Job offer letter has not been issued to [the Plaintiff].  Yesterday, I reviewed his SF-50 documents and I found conflicting information (drug use) that could affect his suitability for this position.  [The Plaintiff] failed to disclose this information on his Declaration for Federal Employment form (OF-306).  Please review the attached documents and notify me asap. Thank you.

(Docs. 39 at 3-4; 39-9 at 1).  Later that day, Siu wrote to the Plaintiff, "You will not be able to report on January 31, 2011.  Your recent SF-50 forms and OF 306 forms are under investigation right now.  Please wait for further instructions.  Thank you."  (Doc. 39-10 at 1).

On February 11, 2011, Siu again wrote to the Plaintiff and informed him, "Your OF-306 form and SF-50 forms are currently under investigation.  Please refer to the attached letter."  (Docs. 32-2 at ¶ 6; 32-3 at 109).  The attached letter notified the Plaintiff that his "records are being investigated" and that "[a]fter evaluating [his] Removal and Resignation SF-50 forms, we concurred that you did not respond sincerely to Question # 12."  (Docs. 32-2 at ¶ 6; 32-3 at 110).  The letter goes on to say,

> Since you failed to disclose information on your OF[-]306 form about your removal and resignation from Robins AFB, an objection to your suitability for employment was submitted to our [DEU] for resolution.  Please provide documentation to clarify or give detailed explanation of the circumstances associated with the incident.  In addition, provide us with information on why you did not reveal your 2006 removal and resignation from Robins AFB on the OF-306.

(Doc. 32-3 at 110).  The letter instructed the Plaintiff to contact Sonja Williams with any questions.  (Doc. 32-3 at 110).  On February 14, 2011, the Plaintiff informed Williams that "there is a settlement agreement in effect with the agency" and "[t]he contents of the agreement lead me to believe my OF-306 is correct."  (Doc. 32-3 at 111).  Three

days later, the Plaintiff sent Williams a copy of the settlement agreement.  (Doc. 32-3 at
111).

Notwithstanding the Plaintiff's response, on February 15, 2011, David Colwell,
Chief of Eglin Housing Maintenance, submitted an SF-62 form, "Agency Request to
Pass over a Preference Eligible or Object to an Eligible," for the following reasons:

> [The Plaintiff] did not respond sincerely to [Q]uestion # 12 of OF[-]306
> Form.  Failing to provide truthful information to myself as the hiring official
> regarding [the Plaintiff's] removal and resignation from Robins AFB has
> caused me to lose confidence in his ability to carry out assignments with
> honesty and integrity.  Recommend this action be terminated.

(Docs. 39-13 at 1-2; 32-3 at 107-08).  Angelia Solomon, as head of the DEU, reviewed
the Plaintiff's employment information to determine if he was suitable to work for Eglin
Air Force Base.  (Docs. 32-2 at ¶ 7; 32-7 at 67:10-16).  According to Solomon, "when
[the Plaintiff's] suitability determination came in and we saw that the selecting official
was saying that he falsified his application based on Question 12, there was no
evidence that he falsified anything."  (Docs. 32-2 at ¶ 7; 32-7 at 80:10-13).  At that point,
"Solomon decided that [the] Plaintiff's truthfulness about his previous employment on
the OF-306 form was no longer an issue."  (Doc. 32-2 at ¶ 7).

But the DEU was not finished reviewing the Plaintiff's application.  According to
Solomon, "we still ha[d] to go through the process of reviewing the applicant's whole
package for any other derogatory information."  (Docs. 32-2 at ¶ 7; 32-7 at 54:10-19,
68:1-12; 80:15-17).  The Plaintiff's OF-306 form also revealed that he had two unpaid
traffic tickets, which "was a sign that [his] driver's license was suspended."  (Doc. 32-2
at ¶ 7).  This was problematic because the Painting Worker position required a valid
driver's license.  (Doc. 32-2 at ¶ 3).  This requirement was reflected in the Air Force

Standard Core Personnel Document for the position, as well as in the advertisement for the position. (Docs. 32-2 at ¶ 3; 32-3 at 137; 32-5 at 113-22). Accordingly, the DEU contacted the Plaintiff "to clarify [if] these traffic tickets [had] been paid for" and to find out if he had a driver's license. (Docs. 32-2 at ¶ 8; 32-7 at 54:22-24, 133:15-21). Although Solomon "signed off on the work," the staffer who did the work was Alicia Pierre. (Doc. 32-7 at 52:18-53:2).

On March 7, 2011, Pierre asked the Plaintiff if he could tell her about "the nature of the tickets … [w]ere they speeding, DUI, or other?" (Docs. 32-2 at ¶ 8; 32-3 at 78). The Plaintiff responded that one was for speeding and the other for "following too close." (Doc. 32-3 at 78). On March 9, Pierre asked the Plaintiff, "What was the amount of each [ticket] and have you paid them or do you have a payment plan?" (Doc. 32-3 at 77-78). The Plaintiff responded that he "intend[ed] to start making payments to the court mid[-]April." (Doc. 32-3 at 77). On March 17, Pierre wrote to the Plaintiff, "One more question, the position requires the applicant to have a valid driver's license. Are you able to show that you have a valid driver's license?" (Doc. 32-3 at 77). The Plaintiff responded, "Please be advised I believe my license is under suspension until[] fine and reinstatement is paid." (Doc. 32-3 at 77).[2]

Based on the Plaintiff's responses, Pierre prepared a "Passover/Suitability Issue Worksheet." (Docs. 32-2 at ¶ 9; 32-7 at 138:17-20). The Worksheet, which is dated "3/18/2011," notes that the Plaintiff "has a suspended license" and "intends to pay tickets mid[-]April." (Docs. 24 at 6; 32-2 at ¶ 9; 32-3 at 74). Under "Action Taken," the Worksheet states, "Sustained. Position requires a valid driver[']s license, applicant[']s

---

[2] On March 24, the Plaintiff wrote to Pierre, "Again please [be] advised I intend to have the traffic ticket fines and reinstatement fee paid to the Municipal Court in April." (Doc. 32-3 at 55).

license is suspended until traffic tickets are paid, therefore applicant would not be able to perform the job at full capacity." (Doc. 32-3 at 74). According to Solomon, "[o]n March 17, 2011, [she] agreed with [Pierre's] decision that is indicated on the worksheet in the Action Taken block." (Doc. 32-3 at 65). Solomon testified that she "approved [Pierre's] decision and signed OPM Decision part of the suitability request and checked the block indicating the action is sustained and the eligible is removed from consideration." (Docs. 32-3 at 65; 32-2 at ¶ 9). It is undisputed that the SF-62 form submitted by Colwell was signed by Solomon on March 17, 2011. (Docs. 32-2 at ¶ 9; 39-13 at 1).

On April 22, 2011, the Plaintiff was informed that his job offer had been rescinded. (Docs. 32-2 at ¶ 10; 32-3 at 137). The letter states,

> After evaluating your file, the [DEU] has determined that you failed to meet one of the conditions of employment. According to the Air Force Standard Core Personnel Document #9W029, a valid driver's license is required for this Painting Worker position. Since you do not currently possess a valid driver's license, you were removed from consideration.

(Docs. 32-2 at ¶ 10; 32-5 at 138). The record does not reveal when or if the Plaintiff obtained a driver's license. (Doc. 32-2 at ¶ 8). "[O]n or before April 5, 2011," the list of applicants who had been certified as eligible for the position expired, such that a new job announcement had to be issued. (Doc. 32-2 at ¶ 10). According to the Defendant, "Eglin AFB chose not to again seek to fill the Painting Worker position." (Doc. 32-2 at ¶ 10).

On June 20, 2011, the Plaintiff filed a petition for enforcement of the settlement agreement with the MSPB. (Doc. 32-2 at ¶ 12). On July 15, 2011, the Plaintiff filed a formal complaint of discrimination with the WR-ALC Equal Opportunity Office at Robins

Air Force Base and alleged that he "was discriminated against on the bases of race (Black), disability (mental) and reprisal (previous EEO Activity)." (Docs. 32-2 at ¶ 11; 32-4 at 162). On September 30, 2011, an MSPB Administrative Judge found that the Defendant breached the terms of the settlement agreement and ordered the Defendant to "delet[e] from its computer database any reference to the appellant's removal." (Docs. 32-2 at ¶ 12; 32-5 at 145-50). On August 21, 2012, an EEOC Administrative Judge held a hearing on the Plaintiff's complaint of discrimination and, on December 18, 2012, the judge ruled in favor of the Defendant. (Doc. 32-2 at ¶ 13).

On November 22, 2013, the Plaintiff filed his complaint in the Eastern District of Virginia. (Doc. 4). The Plaintiff claims that the Defendant engaged in the "prohibited personnel practice[s]" of Title VII discrimination, Title VII reprisal, and disability discrimination. (Doc. 24 at 9-11). The Defendant moved to transfer the case to the Middle District of Georgia and also moved to dismiss the case for failure to state a claim. (Docs. 10; 11). Once the case was transferred, the Defendant withdrew the motion to dismiss and moved for a more definite statement. (Doc. 22). In response, the Plaintiff filed an "Expanded and Modified" complaint. (Docs. 22; 24). Although it is unclear whether the Plaintiff filed the amended complaint within 21 days after service of the Defendant's motion, the Defendant treated it as a "response," withdrew the motion, and filed an answer. (Docs. 26 at 2; 32-1 at 14). Therefore, the Court will treat the amended complaint as the operative pleading. *See* Fed. R. Civ. P. 15(a)(2); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011).

## II.    DISCUSSION

### A.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. *McDonnell Douglas* Framework

A Title VII plaintiff may prove his case directly or circumstantially.  Here, there is no direct evidence of discrimination, so the Plaintiff must rely on circumstantial evidence.  The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, the test for which differs slightly depending on the nature of the claim.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the plaintiff.  *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (internal quotation marks and citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination.  "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of

credence.'" *Id.* (quoting *Burdine*, 450 U.S. at 256).  Put another way, "[a] plaintiff may

… survive summary judgment by 'presenting evidence sufficient to demonstrate a

genuine issue of material fact as to the truth or falsity of the employer's legitimate, non-

discriminatory reasons.'" *Freeman v. Perdue Farms Inc.*, 496 F. App'x 920, 925 (11th

Cir. 2012) (quoting *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 965 (11th Cir. 1997)).

"If the employer proffers more than one legitimate, nondiscriminatory reason, the

plaintiff must rebut each of the reasons to survive a motion for summary judgment."

*Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citation

omitted).

### C. Title VII Claims

In Count I, the Plaintiff claims that "[i]n accordance with the provisions at 5 U.S.C.

[§] 2302.9(A) the agency Robins AFB … engage[d] in Title VII prohibited personnel

practice of discrimination by breach of October 2006, MSPB settlement agreement."

(Doc. 24 at 9); (Doc. 24 at 7) ("[I]t is clear the agency engaged [in] Title VII prohibited

personnel practices of discrimination 5 U.S.C. 2302.9(A).").  More specifically, the

Plaintiff claims that the DEU executed an "adverse personnel action" on March 17,

2011, by "accusing him of lying on his application (OF-306) for employment" and that

the "[a]gency used and considered plaintiff['s] race and prohibited and harmful

information that caused the plaintiff to be treated in a manner of disadvantage

compared to other applicants seeking employment."  (Doc. 24 at 9).  The Plaintiff also

claims that "because the agency failed to take a required action and remove past

information and because of plaintiff['s] involvement in protected MSPB activity, the

agency … engaged in a prohibited personnel practice of discrimination, 5 U.S.C. [§]

2302.9(A)."  (Doc. 39 at 3).

In Count II, the Plaintiff claims that "[i]n accordance with the provisions at Title VII sec. 704(a), the agency Robins AFB … engage[d] in a prohibited personnel practice of reprisal." (Doc. 24 at 10).  More specifically, the Plaintiff argues

> (1) the plaintiff had prior lawful engagement in protected activity against the agency, EEO 2004 and MSPB 2006, (2) agency selecting officials were aware of plaintiff['s] prior protected activity, (3) afterwards the plaintiff was subjected to adverse treatment by the agency, as they removed the offer of employment, and (4) there is a clear nexus between the protected activity by the plaintiff and the adverse treatment by the agency.

(Doc. 24 at 10).  The Plaintiff argues that his settlement agreement, which he provided to Sonja Williams on February 17, 2011, is "proof and evidence of his engagement in lawful protected activity."  (Doc. 24 at 4-5).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Title VII's anti-retaliation provision, on the other hand, "makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"  *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-3(a)).  "In a traditional failure-to-hire case, the plaintiff establishes a prima facie case by demonstrating that: (1) [he] was a member of a protected class; (2) [he] applied and was qualified for a position for which the employer was accepting applications; (3) despite [his] qualifications, [he] was not hired; and (4) the position remained open or

was filled by another person outside of [his] protected class." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).  To establish a prima facie case of retaliation, the Plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.  *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006).

The Plaintiff appears to base his Title VII claims almost entirely on the Defendant's breach of the settlement agreement.[3]  However, the provision the Plaintiff relies upon, 5 U.S.C. § 2302(b)(9)(A),[4] is part of the Civil Service Reform Act, and the Plaintiff does not explain how a violation of this provision serves as a basis for a Title VII claim.[5]  The Defendant does not address this.  Instead, the Defendant "assumes, without conceding" that a prima facie case "could be made" and argues that the Plaintiff has failed to rebut its legitimate, non-discriminatory reason for rescinding the job offer.[6] (Doc. 32-1 at 11).  According to the Defendant, "[t]he job required a driver's license.

---

[3] The only time the Plaintiff references his race is when he claims it was "most certainly … available" in the DCPDS.  (Doc. 39 at 3).  The Plaintiff also references "EEO 2004" activity in his complaint.  (Doc. 24 at 10).  The Defendant argues "it is not clear just what activity is invoked but … stipulates that there was such prior activity which would supply the background for such a claim."  (Doc. 32-1 at 2).

[4] 5 U.S.C. § 2302(b)(9)(A) prohibits "any personnel action against any employee or applicant for employment because of … the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation."

[5] It is not clear if the Plaintiff is attempting to bring a claim under the Civil Service Reform Act. The Court lacks subject matter jurisdiction over any such claim because the Plaintiff has failed to establish that he properly exhausted his administrative remedies.  *See Gibbs v. United States*, 517 F. App'x 664, 668 n.4 (11th Cir. 2013) (citing *Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992)); 5 U.S.C. § 1214(a)(1)(A).

[6] With regard to the failure-to-hire claim, this is a generous assumption.  It does not appear that the Plaintiff has adduced evidence that he was qualified for the position or that the position remained open or was filled by another person outside of his protected class.

The Plaintiff didn't have one and lacked the facility to remedy that during the available time.  He could not be hired for the position."  (Doc. 32-1 at 11).  Because the Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for its actions, "the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination."  *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citation and internal quotation marks omitted).

The Plaintiff attempts to prove that this reason is a pretext by arguing that the SF-62 signed by Solomon, which was the "official document used to conduct the suitability determination," "cite[s] nothing about a driver's license or traffic tickets."  (Doc. 39 at 6-7).  The Plaintiff also argues that Pierre's "investigation" is dated March 18, 2011, but Solomon signed the SF-62 on March 17, 2011.  (Doc. 24 at 6).  The Defendant acknowledges that Air Force personnel initially believed the Plaintiff did not respond sincerely on his OF-306 form.  However, it is undisputed that Solomon decided that the "Plaintiff's truthfulness about his previous employment on the OF-306 form was no longer an issue."  (Doc. 32-2 at ¶ 7).  Consequently, the DEU considered whether there were "any other possible suitability issues."  (Doc. 32-2 at ¶ 7).  Because the position the Plaintiff applied for required a valid driver's license and the Plaintiff did not have a license, the Plaintiff was removed from consideration.  (Doc. 32-2 at ¶¶ 7-10).  The Plaintiff does not dispute that he did not have a valid driver's license.  Nor does he dispute that a driver's license was required for the position.  Therefore, he has failed to meet the Defendant's reason "head on and rebut it."  *Crawford*, 482 F.3d at 1308; *see also Brooks v. Cnty. Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006) ("A reason is not

-14-

pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" (citation omitted)).  Accordingly, the Defendant is entitled to summary judgment on Counts I and II.[7]

### D. Rehabilitation Act Claim

In Count III, the Plaintiff claims the Defendant discriminated against him because of his disability.  To prove that he has a medical condition "within the ADA definition of a disability," the Plaintiff has presented evidence that he entered into and completed a "substance abuse treatment [program] at Carl Vinson VA Medical Center [in] Dublin, Ga." (Docs. 39 at 1-2; 39-3; 39-5).  The Plaintiff argues that Siu's January 26, 2011 letter referring to his "drug use" "cite[s] this disability throughout both Robins AFB and Eglin AFB as reason not to hire [him]." (Doc. 24 at 6).  According to the Plaintiff, the intent of this e-mail is clear: "there is still time available, do not hire [the Plaintiff]." (Doc. 24 at 3).

"The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).  "The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"); thus, cases involving the ADA are precedent for those involving the Rehabilitation Act." *Id.* (citation omitted).  "The elements of an ADA

---

[7] The Court recognizes that the *McDonnell Douglas* framework is not the "*sine qua non*" for a plaintiff to survive a summary judgment motion in an employment discrimination case and that "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks and citation omitted).  However, the Plaintiff has not presented enough circumstantial evidence for a jury to infer intentional discrimination.

discrimination claim are: (1) 'That the Plaintiff had a "disability," as hereafter defined'; (2) 'That the Plaintiff was a "qualified individual" as hereafter defined'; (3) 'That the Plaintiff was [refused employment] [discharged from employment] [not promoted] by the Defendant'; and (4) 'That the Plaintiff's disability was a substantial or motivating factor that prompted the Defendant to take that action.'"  *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1152 n.5 (11th Cir. 2005) (citation omitted).

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  "Determining whether an individual is 'qualified' for a job is a two-step process."  *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000).  "First, the individual must satisfy the prerequisites for the position by demonstrating 'sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job.'"  *Gary v. Ga. Dep't of Human Res.*, 206 F. App'x 849, 851-52 (11th Cir. 2006) (citing *Reed*, 206 F.3d at 1062).  "Second, the individual must demonstrate that [he] can perform the essential functions of the job, either with or without reasonable accommodations."  *Id.* (citation omitted).

The Defendant has presented evidence that the Plaintiff failed to satisfy one of the prerequisites for the position: a valid driver's license.  (Doc. 32-2 at ¶¶ 7-10). According to the Defendant, the "only reason [the] Plaintiff did not get the Painting Worker job was because one of the requirements of the job was that he have a driver's license, and he did not have one."  (Doc. 32-1 at 14).  Again, the Plaintiff does not dispute that he did not have a valid driver's license or that the position required one. Therefore, the Plaintiff has "failed to present evidence to establish an essential element

of his case: that he was a qualified individual under the ADA."  *Galloway v. Aletheia House*, 509 F. App'x 912, 913-14 (11th Cir. 2013).  "Where the nonmoving party has failed to make a sufficient showing 'to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' there exist no genuine issues of material fact."  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citation omitted).  Accordingly, the Defendant has shown that it is entitled to judgment as a matter of law on Count III.

## III.    CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (Doc. 32) is **GRANTED**.

**SO ORDERED**, this 27th of August, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT